**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

JASON CHARLES KOPP,

    Plaintiff,

    v.

THOMAS A., et al.,

    Defendants.

No. 2:22-CV-0282-DMC-P

ORDER

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

    The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

1

rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff Jason Charles Kopp brings suit against four defendants: (1) Thomas A.[1], reporting officer at the Marysville Jail, (2) Robert Ramero, Yuba County public defender, (3) James Perin, investigator for the Yuba County District Attorney's Office, and (4) Stephanie I. Johnson, Chief Investigator for the Yuba County District Attorney's Office.  ECF No. 1, 2.

First Claim:

Plaintiff's first claim is against Defendant Thomas A. for failure to give proper medical care.  See id. at 3.  Plaintiff states that on March 1, 2019, he called 911 reporting that he had been assaulted with a three-foot metal pipe, and that his vehicle had been stolen.  See id.  He states that he "was not acting normal and was placed into a police car."  Id.  He claims that he was never questioned or offered medical care on scene and passed out in the police car "for hours" during transit to the Marysville County Jail.  Id.  Once at the jail Defendant Thomas A. questioned Plaintiff in an interview room.  Id.  Plaintiff states that this interview was recorded. Id.  According to Plaintiff, Defendant A. never asked about Plaintiff's "broken hand, or head injuries."  Id.  After this interview, Plaintiff states that the Marysville Jail took a DNA sample, but "never took the time to assess [Plaintiff's] personal welfare."  Id.  During this time in jail Plaintiff "slept for sixteen days and could hardly eat."  Id.  Because of his physical and mental condition, Plaintiff claims that he "was not in any state of mind" to competently understand and sign a plea deal when he finally met with his public defender on March 20, 2019.  Id.

///

///

///

---

[1] Plaintiff identifies this defendant's last name only by the initial "A."

2

Plaintiff also states that, during the aforementioned interview by Defendant A., he was not informed of a rape allegation against him. See id.  According to Plaintiff, Defendant A. submitted a false police report as to the contents of the interview. Id.  Plaintiff further states that he was not able to see any of these reports until July 9, 2021. Id.  Plaintiff claims that he was not re-questioned at any time prior to his meeting with a public defender. See id.

Second Claim:

Plaintiff met with Defendant Ramero, a defense attorney, for the first time on March 20, 2019. Id at 4.  Plaintiff states that this was his first meeting with anyone since he was interviewed by Defendant A. on March 1. Id.  According to Plaintiff, Defendant Ramero said that Plaintiff's other attorney was too busy to help, and that Defendant Ramero had been working on Plaintiff's case. Id.  Defendant Ramero told Plaintiff that he had interviewed three people, none of whom could be put on the stand, and that a trial would "be 3 against one odds." Id.  Defendant Ramero also told Plaintiff that the district attorney would be filing enough felonies—including "kidnapping and Terrorist Activity"—that Plaintiff would automatically receive three strikes and would likely spend life in prison separated from his children if he did not take a plea deal. Id.  Plaintiff claims that he could not read the plea deal, and that Defendant Ramero read it to him. Id.  Plaintiff also states that he does not remember much of the plea agreement, and that he "signed out of fear, threat, and confusion." Id.  In a document attached to the complaint Plaintiff states that his penmanship on the day he signed his plea agreement shows that he was obviously impaired. ECF No. 1-1, 2.

Third claim:

Plaintiff states that on or around September 17, 2019, he wrote to the District Attorney's office requesting a review of his case. ECF No. 1, 5.  Defendant Perin responded, stating that he had read statements by the Plaintiff, and had interviewed two convicted felons on probation about Plaintiff's case. Id.  Defendant did not ask Plaintiff if there was any other evidence Plaintiff wished to present. See id.  Regarding the "statements," Plaintiff claims he "never gave any sworne [sic] . . . statements to any . . . alleged rape." Id.  Plaintiff again wrote Defendant Perin and presented evidence that Plaintiff believes shows that at least one of the

3

interviewed persons had lied about him but did not receive a response.  See id.

On September 24, 2021, Plaintiff received a letter from Defendant Stephanie I. Johnson, Chief Investigator for the Yuba County District Attorney's Office, stating that she found no fault in Defendant Perin's investigation of the case.  Id.  She also stated that Plaintiff's signature on the plea deal is an acknowledgment of guilt and sent him a copy of the agreement.  Id.  Plaintiff claims that he had not seen the plea agreement prior to this, and that the penmanship on the agreement is not his, showing that he was incompetent at the time of signing.  See id.

## II.  DISCUSSION

Taking the factual allegations as true, Plaintiff appears to raise the following claims: (1) indifference to medical needs, (2) ineffective assistance of counsel, (3) failure to inform Plaintiff of the charges against him, (4) entry of an involuntary or unknowing plea, and (5) prosecutorial misconduct relating to exculpatory evidence presented after conviction.  Except for the allegations of prosecutorial misconduct, all stated violations of Plaintiff's constitutional rights occurred when he was a pre-trial detainee, rather than when he was a prisoner.

For the reasons discussed below, the Court finds that Plaintiff's claim related to pre-trial medical indifference may proceed.  Plaintiff's other claims, however, are not cognizable.

### A.  Claim for Indifference to Medical Needs

Claims by pre-trial detainees suing prison officials for injuries suffered while in custody are brought under the Fourteenth Amendment's Due Process Clause.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  Courts may still look to the Eighth Amendment to determine the "'minimum standard of care.'"  Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996) (quoting Jones v. Johnson, 78 F.2d 769, 771 (9th Cir. 1986)).  Eighth Amendment claims for violations of the right to medical care are judged under a subjective standard of whether the prison official knew their conduct was likely to cause harm.  See Farmer v. Brennan, 525 U.S. 825, 828 (1994).  However, claims "'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard."  Gordon v. Cnty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018) (quoting Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc)).  Therefore, pre-trial

detainee plaintiffs must show that "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk . . . and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." Id.

Only the deliberate indifference standard has diverged between Eighth and Fourteenth Amendment claims with regard to medical needs cases. See Russell v. Lumitap, 31 F.4th 729, 739 (9th Cir. 2022). Therefore, courts may use Eighth Amendment cases to determine whether the defendant's conduct caused a "substantial risk of suffering serious harm." Gordon, 833 F.3d at 1068. Under the Eighth Amendment, an injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

Plaintiff claims that Defendant A. received him in custody, interviewed him, then moved him into custody in the jail, failing to note or treat Plaintiff's broken hand or head injury, and potentially creating a false report to conceal the extent of the injuries. See ECF No. 1, 3. According to Plaintiff, he then slept for most of the following sixteen days, and hardly ate. See id. It is reasonable to infer from the stated facts that Defendant A. intentionally acted regarding the conditions of Plaintiff's confinement by placing him into a holding cell without further investigating Plaintiff's injuries. Taking Plaintiff's factual allegations as true, no other personnel were involved with his intake into the Marysville Jail, and the decision to place him into the cell was Defendant's choice.

Failure to investigate a broken bone or head injury could have put Plaintiff at risk

of suffering serious harm or caused serious harm. Plaintiff directly states that his injuries significantly impacted his daily activities (forcing him to sleep for much of a sixteen-day period). Either injury alone would be likely to cause substantial pain.

Defendant A.'s failure to take any medical action, knowing that Plaintiff claimed to have been assaulted with a three-foot pipe, could be an objectively unreasonable failure to abate any risk to Plaintiff. Making a reasonable inference from the stated facts, Defendant could or should have seen or suspected injuries severe enough to demand further investigation.

Based on Plaintiff's struggle to maintain consciousness during his ensuing time in the jail, Defendant A.'s failure to immediately investigate and seek treatment for Plaintiff's injuries caused Plaintiff further harm.

Taking all factual allegations as true, Plaintiff has stated a cognizable claim for indifference to his medical needs by Defendant A. in violation of Plaintiff's Fourteenth Amendment rights.

### B. Claim of Prosecutorial Misconduct

Plaintiff's claim of prosecutorial misconduct for failure to consider exculpatory evidence does not state a claim upon which relief can be granted. Plaintiff states that the Yuba County District Attorney's Office failed to consider new evidence presented to them after his entry of a guilty plea. See ECF No. 1, 5. To be clear, Plaintiff does not seek the release of any exculpatory evidence from the District Attorney's Office, or state that the prosecutors failed to examine or release exculpatory evidence prior to his conviction. See id. He merely states that the investigators for the District Attorney did not examine evidence he supplied to them or failed to properly pursue post-conviction relief. See id.

Due process does not require that "certain familiar preconviction trial rights be extended to protect [a] postconviction liberty interest. DA's Office v. Osborne, 557 U.S. 52, 68 (2009). The states may decide "what procedures are needed in the context of postconviction relief." Id. at 69. "'[W]hen a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume.'" Id. (quoting Pennsylvania v. Finley, 481 U.S. 551, 559 (1987)). This includes no "liberty interest in

traditional State executive clemency." Id. at 67-68. It is also "well settled that there is no constitutional right to appeal." Abney v. United States, 431 U.S. 651, 656 (1977) (citing McKane v. Durston, 153 U.S. 684 (1984)). Plaintiff may "have a liberty interest in demonstrating his innocence under State law." Osborne, 557 U.S. at 68. There may be such a State avenue to post-conviction relief in this regard, and Plaintiff may challenge that relief as inconsistent with "'any recognized principle of fundamental fairness'" Id. at 70 (quoting Medina v. California, 505 U.S. 437, 448 (1992)).

It is unclear from Plaintiff's allegations if he was prevented from properly pursuing post-conviction relief under State law. However, because there is no constitutional right to pursue those claims, Plaintiff has therefore failed to state a claim under 42 U.S.C. § 1983. Plaintiff also has not alleged that he was deprived of his constitutional rights by a state policy or procedure for post-conviction relief. See ECF No. 1, 5. "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate." Osborne, 557 U.S. at 69. Plaintiff has not alleged any facts that show a fundamental inadequacy or defect of state processes that would give rise to a cognizable claim under 42 U.S.C. § 1983.

### C. Remaining Claims' Relationship to Habeas Corpus

When a state prisoner challenges the legality of his custody and the relief he seeks is a determination that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); see also Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997); Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam). Thus, where a § 1983 action seeking monetary damages or declaratory relief alleges constitutional violations which would necessarily imply the invalidity of the prisoner's underlying conviction or sentence, or the result of a prison disciplinary hearing is the imposition of a sanction affecting the overall length of confinement, such a claim is not cognizable under § 1983 unless the conviction or sentence has first been invalidated on appeal, by habeas petition, or through some similar proceeding. See Heck v. Humphrey, 512 U.S. 477, 483-84 (1994) (concluding that § 1983 claim not cognizable because allegations were akin to malicious

1  prosecution action which includes as an element a finding that the criminal proceeding was

2  concluded in plaintiff's favor); Butterfield v. Bail, 120 F.3d 1023, 1024-25 (9th Cir. 1997)

3  (concluding that § 1983 claim not cognizable because allegations of procedural defects were an

4  attempt to challenge substantive result in parole hearing); cf. Neal, 131 F.3d at 824 (concluding

5  that § 1983 claim was cognizable because challenge was to conditions for parole eligibility and

6  not to any particular parole determination); cf. Wilkinson v. Dotson, 544 U.S. 74 (2005)

7  (concluding that § 1983 action seeking changes in procedures for determining when an inmate is

8  eligible for parole consideration not barred because changed procedures would hasten future

9  parole consideration and not affect any earlier parole determination under the prior procedures).

<u>Right to Be Informed of the Nature of Charges:</u>

In Plaintiff's first claim, he states that Defendant A. never told Plaintiff of a rape accusation against him. See ECF No. 1, 3. There are two grounds upon which Plaintiff may attempt to show that this is a violation of his constitutional rights: (1) he may claim that this omission led to an unknowing or involuntary plea, or (2) he may claim that he was not informed of the charges against him. The claim of an involuntary or unknowing plea is addressed below, here we will address Plaintiff's claim that he was not aware of the charges against him.

Criminal defendants have the right "to be informed of the nature and cause of the accusation" against them. U.S. Const. amend. VI. According to Plaintiff, Defendant A. did not make Plaintiff aware of a rape accusation against the Plaintiff. Ignoring the fact that Plaintiff's Sixth Amendment rights may not have attached at the time of this interview, and assuming that he did have a right to know that there was a rape accusation against him, Plaintiff's claim for damages is still barred. Again, if Plaintiff were successful on this claim, it would imply the invalidity of his conviction. Therefore, Plaintiff's claim for damages is barred, and his sole remedy for this violation of his rights is a habeas petition. See Heck 512 U.S. 483-484.

///

///

///

///

Ineffective Assistance of Counsel:

In Plaintiff's second claim, he states that his public defender, Defendant Ramero, was only able to meet with Plaintiff once, failed to conduct a proper investigation into Plaintiff's case, and in their one and only meeting urged Plaintiff to sign a plea agreement via "threats." ECF No. 1, 4. According to Plaintiff, Defendant Ramero said that he was not able to find any witnesses that could be put on the stand. See id. Plaintiff's claim is—at its essence—ineffective assistance of counsel due to a failure to conduct a proper investigation, or to inform Plaintiff of alternatives to the plea agreement.

The alleged acts and omissions could constitute a violation of Plaintiff's rights under the Sixth Amendment. Criminal defendants are entitled to "the Assistance of Counsel." U.S. Const. amend. VI. To show that counsel was ineffective, Plaintiff must show that his counsel failed to give "reasonably effective assistance." Strickland v. Washington, 466 U.S. 668, 687 (1984). He must also show that the lack of effective assistance was prejudicial to his case. See id. According to Plaintiff in this case, Defendant Ramero failed to conduct an adequate investigation, and coerced Plaintiff into signing a plea deal, failing to consider or advise Plaintiff of alternatives. This was potentially prejudicial, in that it may have caused Plaintiff to sign a plea deal that he would not otherwise been willing to accept.

However, if Plaintiff were to successfully prove that his Sixth Amendment rights were violated in this way, it would necessarily invalidate his conviction, as his plea would have been entered based on the faulty advice of Defendant Ramero. See Heck 512 U.S. 483-84. Therefore, Plaintiff's claim for damages on this basis is barred until such time as his conviction is overturned either by appeal, habeas petition, or other means.

Involuntary or Unknowing Plea:

In his second claim, and throughout his complaint, Plaintiff alleges that he was not mentally competent to understand and sign his plea agreement. See ECF No. 1, 3-5. Guilty pleas made due to "ignorance, incomprehension, coercion . . . or threats" are invalid. Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). Here, Plaintiff has alleged all of the above. He has claimed not to have understood or remembered the plea agreement due to his untreated injuries,

9

1  and to have not understood that there was a rape charge against him. See ECF No. 1, 3-5.
2  Plaintiff points to the difference in his signature on the plea agreement as evidence that he was
3  not competent to sign it. See id. at 5.  He has also claimed to have been threatened and coerced
4  into signing by his public defender, Defendant Ramero. See id. at 4.

5        Again, the Heck rule informs the ultimate result here. If Plaintiff were to successfully
6  show that his plea was not made voluntarily for any of the stated reasons, it would necessarily
7  invalidate his conviction. 512 U.S. 483-84.  Therefore, his claim for damages based on this
8  violation of his constitutional rights is barred.

## III. CONCLUSION

10       Because it is possible that the deficiencies identified in this order may be cured by
11 amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d
12 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an
13 amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258,
14 1262 (9th Cir. 1992).  Therefore, if Plaintiff amends the complaint, the Court cannot refer to the
15 prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220.  An
16 amended complaint must be complete in itself without reference to any prior pleading. See id.

17       If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the
18 conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See
19 Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how
20 each named defendant is involved, and must set forth some affirmative link or connection
21 between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d
22 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

23       Because the complaint appears to otherwise state cognizable claims, if no amended
24 complaint is filed within the time allowed therefor, the Court will issue findings and
25 recommendations that the claims identified herein as defective be dismissed, as well as such
26 further orders as are necessary for service of process as to the cognizable claims.

27 / / /
28 / / /

1         Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

**Dated: June 14, 2022**

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE